# UNITED STATES DISTRICT COURT

for the

Central District of California

In the Matter of the Search of                    )
*(Briefly describe the property to be searched*    )
*or identify the person by name and address)*      )    Case No.   **SA12-556M**
Information associated with the account[s] identified as )
sellcc_hotandnew_no1@yahoo.com and                )
moneypak82@yahoo.com that is stored at premises   )
controlled by [provider].                         )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A

located in the _____Northern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section(s) | Offense Description |
|---|---|
| 18 U.S.C. §§ 1029(a)(1)-(5), 1028A, 1343, 1030 , and 371 | See attached Affidavit |

The application is based on these facts:

See attached Affidavit

☐ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/s/
*Applicant's signature*

Christopher Kajfosz, FBI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  11/29/12

**JEAN P. ROSENBLUTH**
*Judge's signature*

City and state:  Santa Ana, California

Jean P. Rosenbluth, U.S. Magistrate Judge
*Printed name and title*

AUSA: Douglas F. McCormick

*(side stamp, left margin)* LODGED   2012 NOV 29 AM 11:36   CLERK U.S. DISTRICT COURT CENTRAL DISTRICT OF CALIFORNIA

*(stamp, right)* FILED - SOUTHERN DIVISION CLERK, U.S. DISTRICT COURT
NOV 29 2012
CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

**EXHIBIT**

## A F F I D A V I T

I, Christopher Kajfosz, being duly sworn, hereby state as follows:

### I.

### INTRODUCTION

1.    I am a Special Agent ("SA") with the Federal Bureau of Investigation ("FBI"), and have been so employed for approximately two years.  I am currently assigned to the FBI's Cybercrimes squad, where I specialize in the investigation of computer and high-technology crimes, including computer intrusions, denial of service attacks, and other types of malicious computer activity.  During my career as an FBI Special Agent, I have participated in numerous computer crime investigations.  In addition, I have received both formal and informal training from the FBI and other institutions regarding computer-related investigations and computer technology.

2.    I make this affidavit in support of an application for a search warrant for information associated with the accounts identified as sellcc_hotandnew_no1@yahoo.com ("SUBJECT ACCOUNT #1") and moneypak82@yahoo.com ("SUBJECT ACCOUNT #2") (the "SUBJECT ACCOUNTS") that are stored at premises controlled by Yahoo! Inc. ("PROVIDER"), a provider of electronic communication and remote computing services, headquartered at 701 First

Avenue, Sunnyvale, California, 94089.[1]  The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), (b)(1)(A), and (c)(1)(A) to require the PROVIDER to disclose to the government copies of the information (including the content of communications) described in Section II. of Attachment B. Upon receipt of the information described in Section II. of Attachment B, law enforcement agents and/or individuals assisting law enforcement and acting at their direction will review that information to locate the items described in Section III. of Attachment B.

3.   As described more fully below, I respectfully submit there is probable cause to believe that the information associated with the SUBJECT ACCOUNTS constitutes evidence,

_____

[1] Because this Court has jurisdiction over the offense(s) being investigated, it may issue the warrant to compel the PROVIDER pursuant to 18 U.S.C. §§ 2703(a), (b)(1)(A), (c)(1)(A).  See 18 U.S.C. §§ 2703(a) ("A governmental entity may require the disclosure by a provider . . . pursuant to a warrant issued using the procedures described in the Federal Rules of Criminal Procedure . . . by a court of competent jurisdiction") and 2711 ("the term 'court of competent jurisdiction' includes -- (A) any district court of the United States (including a magistrate judge of such a court) or any United States court of appeals that -- (i) has jurisdiction over the offense being investigated; (ii) is in or for a district in which the provider of a wire or electronic communication service is located or in which the wire or electronic communications, records, or other information are stored; or (iii) is acting on a request for foreign assistance pursuant to section 3512 of this title").

contraband, fruits, or instrumentalities of criminal violations

of 18 U.S.C. §§ 1029(a)(1)-(5) (access device fraud), 1028A

(aggravated identity theft), 1343 (wire fraud), 1030 (computer

intrusion), and 371 (conspiracy) (collectively, the "SUBJECT

OFFENSES").

    4.   The facts set forth in this affidavit are based upon

my personal observations, my training and experience, and

information obtained from other FBI agents and witnesses.  This

affidavit is intended to show merely that there is sufficient

probable cause for the requested warrant and does not purport to

set forth all of my knowledge of or investigation into this

matter.  Unless specifically indicated otherwise, all

conversations and statements described in this affidavit are

related in substance and in part only.

II.

<u>SUMMARY OF INVESTIGATION</u>

    5.   After ISP records showed that theme park tickets

purchased with a stolen credit card number were bought from a

computer located at 4554 N. Banner Drive, Apartment 2, Long

Beach, California, 90807, the FBI executed a federal search

warrant at that location on October 2, 2012.  During the search

the FBI seized computers, cellular telephones, and theme park

tickets.  Among the items found on an iPhone seized at the

3

search location were e-mails from the SUBJECT ACCOUNTS which contained stolen credit card numbers.

III.

### PROBABLE CAUSE

6.   Based on my training and experience, I have learned the following:

a.   Carding:  "Carding" refers to various criminal activities associated with stealing personal identification information and financial information belonging to other individuals -- including the account numbers on their credit cards, bank cards, debit cards, or other access devices -- and using that information to obtain money, goods, or services without the victims' authorization or consent.  For example, a criminal might gain unauthorized access to (or "hack") a database maintained on a computer server and steal credit card numbers and other personal information.  The criminal can then use the stolen information to, among other things: (1) buy goods or services online; (2) manufacture counterfeit credit cards by encoding them with the stolen account information; (3) manufacture false identification documents (which can be used in turn to facilitate fraudulent purchases with the information); and (4) sell the information to others who intend to use the information for such purposes.  "Carding" refers to the foregoing criminal activity generally and encompasses a variety

4

of federal offenses, including, but not limited to, identification document fraud, aggravated identity theft, access device fraud, computer hacking, wire fraud, and bank fraud.

b. Card verification value codes: Card verification value code ("CVVC" or "CVV") is a security feature for credit or debit card transactions, providing increased protections for the merchants against credit card fraud.

7. On October 2, 2012, the FBI executed a federal search warrant issued by United States Magistrate Judge Jean P. Rosenbluth at 4554 N. Banner Drive, Apartment #2, Long Beach, CA 90807. A copy of the affidavit sworn by Special Agent Mark Burnett in support of that search warrant is attached hereto as Exhibit A.

8. During the execution of the search warrant, FBI agents interviewed the occupants of 4554 N. Banner Drive, Apartment #2. I have reviewed the FBI 302s of those interviews as well as the FBI 302s relating to the execution of the search warrant. From my review of those FBI 302s, I learned the following:

a. Lamarr Ramsey was one of the residents of 4554 N. Banner Drive, Apartment #2.

b. Ramsey identified a photograph of the person who sold Knott's Berry Farm tickets to an undercover FBI agent as "Gotti."

5

     c.    Ramsey admitted that "Gotti" comes over to his apartment to work on music and hang out.  Ramsey indicated that "Gotti" has used the computer at Ramsey's apartment.

     d.    An iPhone 5 belonging to Ramsey was one of the items seized during execution of the search warrant.

    9.    On November 2, 2012, I reviewed Ramsey's iPhone.  From my review of the iPhone I learned the following:

     a.    The iPhone contained e-mails received from the e-mail account sellcc_hotandnew_no1@yahoo.com (SUBJECT ACCOUNT #1).

     b.    On August 16, 2012, an e-mail containing 18 credit card numbers was received from SUBJECT ACOUNT #1, which included addresses, credit card expiration dates, and card verification value codes.  None of the addresses appeared to be related to the user of the iPhone, such as 4554 N. Banner Drive, Apartment 2, Long Beach, CA, 90807.

     c.    On August 17, 2012, an e-mail containing nine credit card numbers was received from SUBJECT ACCOUNT #1 with addresses, credit card expiration dates, and card verification value codes.  None of the addresses appeared to be related to the user of the iPhone, such as 4554 N. Banner Drive, Apartment 2, Long Beach, CA, 90807.

     d.    On August 25, 2012, an e-mail containing 17 credit card numbers was received from SUBJECT ACCOUNT #1 with

addresses, credit card expiration dates, and card verification

value codes.   None of the addresses appeared to be related to

the user of the iPhone, such as 4554 N. Banner Drive, Apartment

2, Long Beach, CA, 90807.

     e.   A Discover credit card number belonging to

Krista Hardin was one of the credit card numbers located in an

e-mail from SUBJECT ACCOUNT #1 on Ramsey's iPhone.

    10.   On November 5, 2012, I reviewed the tickets purchased

by the undercover FBI special agent on August 24, 2012.   From

those tickets I learned the following:

     a.   A Discover credit card number belonging to Hardin

was used to purchase the six Knott's Berry Farm tickets re-sold

to the undercover FBI Agent.

     b.   Each of the six tickets was registered to a

different name, respectively; karen, john, tina, robert, sam

and, megan.

     c.   The purchaser for all six tickets was Krista

Hardin.

     d.   The method of payment for all six tickets was

Discover Card.

     e.   The confirmation number for all six tickets was

52263748.

     f.   All six tickets were purchased on August 23,

2012.

11.  On September 11, 2012, Krista Hardin was interviewed via telephone.  During that interview Hardin said she did not purchase any Knott's Berry Farm tickets with her Discover Card, she did not authorize anyone to purchase tickets with her Discover Card, and she did not provide her Discover Card account information to anyone for purchasing tickets.

12.  On November 2, 2012, I reviewed the same iPhone taken from the address above.  From the review of the iPhone I learned the following:

a.  The iPhone also contained e-mails received from the e-mail account moneypak82@yahoo.com (SUBJECT ACCOUNT #2).

b.  On September 27, 2012, 13 credit card numbers were received from SUBJECT ACCOUNT #2 with addresses, credit card expiration dates, and card verification value codes.  None of the addresses appeared to be associated with the user of the iPhone, such as 4554 N. Banner Drive, Apartment 2, Long Beach, CA, 90807.

c.  A Discover credit card number belonging to victim Steven Petifurd was one of the credit card numbers sent via SUBJECT ACCOUNT #2.  According to information obtained from Knott's Berry Farm, Petifurd's Discover credit card was used to purchase e-tickets.

13.  On November 1, 2012, Steven Petifurd was interviewed via telephone.  During that interview Petifurd said he did not

purchase any Knott's Berry Farm tickets with his Discover credit card, he did not authorize anyone to purchase tickets with his Discover credit card, and he did not provide his Discover credit card account information to anyone for purchasing tickets.

IV.

BACKGROUND REGARDING E-MAIL AND THE PROVIDER

14. In my training and experience, I have learned that the PROVIDER provides a variety of online services, including e-mail, to the public. The PROVIDER allows subscribers to obtain e-mail accounts at the domain name yahoo.com, like the SUBJECT ACCOUNTS. Subscribers obtain an account by registering with the PROVIDER. During the registration process, the PROVIDER asks subscribers to provide basic personal information. Therefore, the computers of the PROVIDER are likely to contain stored electronic communications and information concerning subscribers and their use of the PROVIDER's services, such as account access information, e-mail transaction information, and account application information. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the user(s) of the SUBJECT ACCOUNTS.

15. A subscriber of the PROVIDER can also store with the PROVIDER files in addition to e-mails, such as Flickr contents, Yahoo! Group activity logs, Yahoo! Group content, Yahoo!

9

Chat/Instant Messenger logs, pictures, and other files, on servers maintained and/or owned by the PROVIDER. In my training and experience, evidence of who was using an e-mail account may be found in such information.

16. In my training and experience, e-mail providers generally ask their subscribers to provide certain personal identifying information when registering for an e-mail account. Such information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative e-mail addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number). In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the user(s) of the SUBJECT ACCOUNTS.

17. In my training and experience, e-mail providers typically retain certain transactional information about the creation and use of each account on their systems. This information can include the date on which the account was created, the length of service, records of login (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other

log files that reflect usage of the account.  In addition, e-mail providers often have records of the Internet Protocol ("IP") address used to register the account and the IP addresses associated with particular logins to the account.  Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the SUBJECT ACCOUNTS.

18.  In my training and experience, e-mail account users will sometimes communicate directly with an e-mail service provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users.  E-mail providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications.  In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the user(s) of the SUBJECT ACCOUNTS.

19.  I know from my training and experience that the contents of an e-mail account may be important to establishing the actual user who has dominion and control of that account at a given time.  E-mail accounts may be registered in false names or screen names from anywhere in the world with little to no

verification by the service provider.  They may also be used by multiple people.  Given the ease with which e-mail accounts may be created under aliases, and the rarity with which law enforcement has eyewitness testimony about a defendant's use of an e-mail account, investigators often have to rely on circumstantial evidence to show that an individual was the actual user of a particular account.  Only by piecing together information contained in the contents of an account may an investigator establish who the actual user of an account was. Often those pieces will come from a time period before the account was used in the criminal activity.  Limiting the scope of the search for information showing the actual user of the account would, in some instances, prevent the government from identifying the user of the account and, in other instances, prevent a defendant from suggesting that someone else was responsible.  Therefore, the complete contents of a given account, including the e-mail addresses and messages sent to that account, often provides important evidence regarding the actual user's dominion and control of that account.  For the purpose of searching for content demonstrating the actual user(s) of the SUBJECT ACCOUNTS, I am requesting a warrant requiring the PROVIDER to turn over information associated with the SUBJECT ACCOUNTS for a period beginning 90 days before the

earliest e-mail sent from the SUBJECT ACCOUNTS described above for review by the search team.

20.   Relatedly, the government must be allowed to determine whether other individuals had access to the SUBJECT ACCOUNTS. If the government were constrained to review only a small subsection of an e-mail account, that small subsection might give the misleading impression that only a single user had access to the account.

21.   I also know based on my training and experience that criminals discussing their criminal activity may use slang, short forms (abbreviated words or phrases such as lol to express "laugh out loud"), or codewords (which require entire strings or series of e-mail conversations to determine their true meaning) when discussing their crimes.  They can also discuss aspects of the crime without specifically mentioning the crime involved. In the electronic world, it is even possible to use pictures, images and emoticons (images used to express a concept or idea such as a happy face inserted into the content of an e-mail or the manipulation and combination of keys on the computer keyboard to convey an idea, such as the use of a colon and paren :) to convey a smile or agreement) to discuss matters.  "Keyword searches" would not account for any of these possibilities, so actual review of the contents of an e-mail account by law enforcement personnel with information regarding the identified

criminal activity, subject to the search procedures set forth in Attachment B, is necessary to find all relevant evidence within the account.

22. As set forth Attachment B, I am requesting a warrant that permits the search team to keep the original production from the PROVIDER under seal until the investigation is completed and, if a case is brought, that case is completed through disposition, trial, appeal, or collateral proceeding.

a. I make that request because I believe it might be impossible for the PROVIDER to authenticate information taken from the SUBJECT ACCOUNTS as its business record without the original production to examine. Even if the PROVIDER kept an original copy at the time of production (against which it could compare against the results of the search at the time of trial), the government cannot compel the PROVIDER to keep a copy for the entire pendency of the investigation and/or case. If the original production is destroyed, it may be impossible for the PROVIDER to examine a particular document found by the search team and confirm that it was a business record of the PROVIDER's taken from the SUBJECT ACCOUNTS.

b. I also know from my training and experience that many e-mail accounts are purged as part of the ordinary course of business by providers. For example, if an e-mail account is not accessed within a specified time period, it -- and its

14

contents -- may be deleted.  As a consequence, there is a risk
that the only record of the contents of an e-mail account might
be the production that a provider makes to the government, for
example, if a defendant is incarcerated and does not (perhaps
cannot) access his or her e-mail account.  Preserving evidence,
therefore, would ensure that the government can satisfy its
Brady obligations and give the defendant access to evidence that
might be used in his or her defense.

V.

REQUEST FOR NON-DISCLOSURE

23.  Pursuant to 18 U.S.C. § 2705(b), I request that the
Court enter an order commanding the PROVIDER not to notify any
person, including the subscriber(s) of the SUBJECT ACCOUNTS, of
the existence of the warrant because there is reason to believe
that such notification will result in: (1) flight from
prosecution; (2) destruction of or tampering with evidence;
(3) intimidation of potential witnesses; or (4) otherwise
seriously jeopardizing the investigation.  The full extent of the
current investigation described above is not public, and I know,
based on my training and experience, that credit card fraudsters
often will destroy digital evidence if the perpetrator learns of
an investigation.  In addition, if the PROVIDER or other person
notifies the targets of the investigation that a warrant has been
issued for the SUBJECT ACCOUNTS, the unidentified perpetrators

15

will further mask their activity and seriously jeopardize the investigation.

VI.

CONCLUSION

24.   Based on the foregoing, I request that the Court issue the proposed search warrant.

_____/s/_____
CHRISTOPHER KAJFOSZ
Special Agent, FBI

Subscribed and sworn to before
me on November 29, 2012

**JEAN P. ROSENBLUTH**
_____
HONORABLE JEAN P. ROSENBLUTH
UNITED STATES MAGISTRATE JUDGE

16

## ATTACHMENT A

### PROPERTY TO BE SEARCHED

This warrant applies to information associated with the accounts identified as sellcc_hotandnew_no1@yahoo.com and moneypak82@yahoo.com that are stored at premises controlled by Yahoo! Inc., a company that accepts service of legal process at 701 First Avenue, Sunnyvale, California, 94089.

1

ATTACHMENT B

ITEMS TO BE SEIZED

I.   SEARCH PROCEDURE

1.   The search warrant will be presented to personnel of
Yahoo! Inc. (the "PROVIDER"), who will be directed to isolate
the information described in Section II. below.

2.   To minimize any disruption of service to third
parties, the PROVIDER's employees and/or law enforcement
personnel trained in the operation of computers will create an
exact duplicate of the information described in Section II.
below.

3.   The PROVIDER's employees will provide in electronic
form the exact duplicate of the information described in
Section II. below to the agent who serves the search warrant.

4.   With respect to contents of wire and electronic
communications produced by the PROVIDER (hereafter, "content
records," see Section II.10.a below), law enforcement agents
and/or individuals assisting law enforcement and acting at their
direction (the "search team") will examine such content records
pursuant to search procedures specifically designed to identify
items to be seized under this warrant.  The search shall extract
and seize only the specific items to be seized under this
warrant (see Section III. below).  In conducting this search,

1

the search team shall take notes regarding how it conducts the search.

5.    If the search team encounters immediately apparent contraband or other evidence of a crime outside the scope of the items to be seized, the team shall immediately discontinue its search pending further order of the Court and shall make and retain notes detailing how the contraband or other evidence of a crime was encountered, including how it was immediately apparent contraband or evidence of a crime.

6.    The search team will complete its search of the content records as soon as is practicable but not to exceed 60 days from the date of receipt from the PROVIDER of the response to this warrant.  If additional time is needed, the government may seek an extension of this time period from the Court within the original 60-day period.

7.    Once the search team has completed its review of the content records and created copies of the items seized pursuant to the warrant, the original production from the PROVIDER will be sealed -- and preserved by the search team for authenticity and chain of custody purposes -- until further order of the Court.

8.    The special procedures relating to digital media found in this warrant govern only the search of digital media pursuant

to the authority conferred by this warrant and do not apply to any search of digital media pursuant to any other court order.

9. Pursuant to 18 U.S.C. § 2703(g) the presence of an agent is not required for service or execution of this warrant.

II. **INFORMATION TO BE DISCLOSED BY THE PROVIDER**

10. To the extent that the information described in Attachment A is within the possession, custody, or control of the PROVIDER, including any information that has been deleted but is still available to the PROVIDER, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the PROVIDER is required to disclose the following information to the government for each SUBJECT ACCOUNT listed in Attachment A:

**SUBJECT ACCOUNT #1**

a. All contents of all wire and electronic communications associated with the SUBJECT ACCOUNT #1, including but not limited to:

i. For the time period of May 16, 2012, to the present, all e-mails associated with the SUBJECT ACCOUNT #1, including stored or preserved copies of e-mails sent to and from the account, draft e-mails, and deleted e-mails, as well as all header information associated with each e-mail.

ii. For the time period of May 16, 2012, to the present, all records or other information stored at any time by subscriber(s) of the SUBJECT ACCOUNT #1, including Flickr

3

contents, Yahoo! Group activity logs, Yahoo! Group content, Yahoo! Chat/Instant Messenger logs, pictures, and other files.

                iii. For the time period of May 16, 2012, to the present, all records pertaining to communications between the PROVIDER and any person regarding the SUBJECT ACCOUNT #1, including contacts with support services and records of actions taken.

        b.  All user connection logs and transactional information of all activity relating to the SUBJECT ACCOUNT #1 described above in Section II.10.a, including but not limited to all log files, dates, times, durations, data transfer volumes, methods of connection, IP addresses, ports, routing information, dial-ups, and locations.

        c.  All subscriber information pertaining to the SUBJECT ACCOUNT #1, including but not limited to the date on which the account was created, the length of service, types of service utilized, account status, account settings, the IP address used to register the account, login IP addresses associated with session dates and times, the subscriber's full names, screen names, other account names or e-mail addresses associated with the account, telephone numbers, physical addresses, and other identifying information regarding the subscriber, as well as means and source of payment, including detailed billing records.

4

## SUBJECT ACCOUNT #2

d.    All contents of all wire and electronic communications associated with the SUBJECT ACCOUNT #2, including but not limited to:

i.  For the time period of June 27, 2012, to the present, all e-mails associated with the SUBJECT ACCOUNT #2, including stored or preserved copies of e-mails sent to and from the account, draft e-mails, and deleted e-mails, as well as all header information associated with each e-mail.

ii.  For the time period of June 27, 2012, to the present, all records or other information stored at any time by subscriber(s) of the SUBJECT ACCOUNT #2, including Flickr contents, Yahoo! Group activity logs, Yahoo! Group content, Yahoo! Chat/Instant Messenger logs, pictures, and other files.

iii. For the time period of June 27, 2012, to the present, all records pertaining to communications between the PROVIDER and any person regarding the SUBJECT ACCOUNT #2, including contacts with support services and records of actions taken.

e.    All user connection logs and transactional information of all activity relating to the SUBJECT ACCOUNT #2 described above in Section II.10.a, including but not limited to all log files, dates, times, durations, data transfer volumes,

methods of connection, IP addresses, ports, routing information, dial-ups, and locations.

   f. All subscriber information pertaining to the SUBJECT ACCOUNT #2, including but not limited to the date on which the account was created, the length of service, types of service utilized, account status, account settings, the IP address used to register the account, login IP addresses associated with session dates and times, the subscriber's full names, screen names, other account names or e-mail addresses associated with the account, telephone numbers, physical addresses, and other identifying information regarding the subscriber, as well as means and source of payment, including detailed billing records.

## III. INFORMATION TO BE SEIZED BY THE GOVERNMENT

  11. For each SUBJECT ACCOUNT listed in Attachment A, the search team may seize:

   a. All information described above in Section II.10.a that constitutes evidence, contraband, fruits, or instrumentalities of violations of 18 U.S.C. §§ 1029(a)(1)-(5) (access device fraud), 1028A (aggravated identity theft), 1343 (wire fraud), 1030 (computer intrusion), and 371 (conspiracy), occurring after August 1, 2012, namely:

i.      Information relating to who created, accessed, or used the SUBJECT ACCOUNT, including records about their identities and whereabouts.

ii.  Records, documents, programs, applications, and materials containing or relating to personal identification information ("PII"), including Social Security numbers, driver's license numbers, personal identification numbers ("PINs"), passwords, mother's maiden names, credit card numbers, card verification value codes, bank account numbers, other financial account numbers, addresses, telephone numbers, dates of birth, and other vital records, for individuals other than Lamarr Ramsey.

iii. Records, documents, programs, applications, and materials relating to carding or the trafficking of credit card numbers.

iv.  Records, documents, programs, applications, and materials relating to carding forum members or others engaged in the distribution or use of PII via the Internet.

v. · Records, documents, programs, applications, and materials relating to e-mail accounts used for carding activities.

vi.  Records, documents, programs, applications, and materials relating to amusement park tickets or passes.

vii. Records, documents, programs, applications, and materials relating to craigslist.

viii. Records, documents, programs, applications, and materials relating to skimming devices.

ix. Records, documents, programs, applications, and materials relating to personal identification numbers ("PINs"), passwords, card verification values ("CVV"), or other security codes or features associated with credit cards or other access devices.

x. Records, documents, programs, applications, and materials relating to money transfer or payment processing companies, including Paypal.

xi. Records, documents, programs, applications, and materials relating to the transfer, sale, distribution, or use of PII.

xii. Records, documents, programs, applications, and materials relating to payments made or received by any individual involved in the distribution or use of PII.

b. All records and information described above in Sections II.10.b and II.10.c.

IV. PROVIDER PROCEDURES

12. IT IS ORDERED that the PROVIDER shall deliver the information set forth in Section II. within 10 days of the

service of this warrant.  The PROVIDER shall send such

information to:

> SPECIAL AGENT CHRISTOPHER KAJFOSZ
> FEDERAL BUREAU OF INVESTIGATION
> 4000 WEST METROPOLITAN DRIVE, SUITE 200
> ORANGE, CA 92868
> TEL: (714) 939-3213
> FAX: (714) 939-3540
> Christopher.kajfosz@ic.fbi.gov

13.  IT IS FURTHER ORDERED that the PROVIDER shall provide

the name and contact information for all employees who conduct

the search and produce the records responsive to this warrant.

14.  IT IS FURTHER ORDERED that the PROVIDER shall not

notify any person, including the subscriber(s) of each account

identified in Attachment A, of the existence of the warrant.

ORIGINAL

AO 93  (Rev. 12/09) Search and Seizure Warrant  (USAO CDCA Rev. 01/2013)

# UNITED STATES DISTRICT COURT
### for the
Central District of California

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*
Information associated with the account[s] identified as
cordie_williams@aol.com that is stored at premises
controlled by AOL, Inc.

)
)
)  Case No.   **SA13-146M**
)
)
)

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search
of the following person or property located in the _____Eastern_____ District of _____Virginia_____
*(identify the person or describe the property to be searched and give its location)*:
See Attachment A

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the
property to be seized)*:
See Attachment B

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or
property.

**YOU ARE COMMANDED** to execute this warrant on or before      14 days from the date of its issuance
                                                                                            *(not to exceed 14 days)*
☑ in the daytime  6:00 a.m. to 10 p.m.          ☐ at any time in the day or night as I find reasonable cause has been
                                                                         established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property
taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the
place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an
inventory as required by law and promptly return this warrant and inventory to United States Magistrate Judge
on duty at the time of the return through a filing with the Clerk's Office.
                        *(name)*

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay
of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be
searched or seized *(check the appropriate box)* ☐ for _____ days *(not to exceed 30)*.
                                                          ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:    4/15/13  1:15 pm                            JEAN P. ROSENBLUTH
                                                                                                    *Judge's signature*

City and state:    Santa Ana, California                    Hon. Jean P. Rosenbluth, U.S. Magistrate Judge
                                                                                            *Printed name and title*

AUSA: Douglas F. McCormick

**EXHIBIT 2**

*AO 93  (Rev. 12/09) Search and Seizure Warrant (Page 2)*

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant ~~and inventory~~ left with: |

*Inventory made in the presence of :*

*Inventory of the property taken and name of any person(s) seized:*
[Please provide a description that would be sufficient to demonstrate that the items seized fall within the items authorized to be seized pursuant to the warrant (e.g., type of documents, as opposed to "miscellaneous documents") as well as the approximate volume of any documents seized (e.g., number of boxes).  If reference is made to an attached description of property, specify the number of pages to the attachment and any case number appearing thereon.]

*Certification* (by officer present during the execution of the warrant)

*I declare under penalty of perjury that I am an officer who executed this warrant and that this inventory is correct and was returned along with the original warrant to the designated judge through a filing with the Clerk's Office.*

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

<u>**A F F I D A V I T**</u>

I, Christopher Kajfosz, being duly sworn, hereby state as follows:

## I.

## INTRODUCTION

1.   I am a Special Agent ("SA") with the Federal Bureau of Investigation ("FBI"), and have been so employed for approximately two years.  I am currently assigned to the FBI's Cybercrimes squad, where I specialize in the investigation of computer and high-technology crimes, including computer intrusions, denial of service attacks, and other types of malicious computer activity.  During my career as an FBI Special Agent, I have participated in numerous computer crime investigations.  In addition, I have received both formal and informal training from the FBI and other institutions regarding computer-related investigations and computer technology.

2.   I make this affidavit in support of an application for a search warrant for information associated with the account identified as <u>cordie_williams@aol.com</u> ("SUBJECT ACCOUNT") that is stored at premises controlled by AOL Inc. ("PROVIDER"), a provider of electronic communication and remote computing services, headquartered at 22000 AOL Way, Dulles, Virginia,

20166.[1]  The information to be searched is described in the

following paragraphs and in Attachment A.  This affidavit is

made in support of an application for a search warrant under 18

U.S.C. §§ 2703(a), (b)(1)(A), and (c)(1)(A) to require the

PROVIDER to disclose to the government copies of the information

(including the content of communications) described in

Section II of Attachment B.  Upon receipt of the information

described in Section II of Attachment B, law enforcement agents

and/or individuals assisting law enforcement and acting at their

direction will review that information to locate the items

described in Section III of Attachment B.  Attachments A and B

are incorporated herein by reference.

    3.   As described more fully below, I respectfully submit

there is probable cause to believe that the information

associated with the SUBJECT ACCOUNT constitutes evidence,

---

[1] Because this Court has jurisdiction over the offense(s) being
investigated, it may issue the warrant to compel the PROVIDER
pursuant to 18 U.S.C. §§ 2703(a), (b)(1)(A), (c)(1)(A).  See 18
U.S.C. §§ 2703(a) ("A governmental entity may require the
disclosure by a provider . . . pursuant to a warrant issued
using the procedures described in the Federal Rules of Criminal
Procedure . . . by a court of competent jurisdiction") and 2711
("the term 'court of competent jurisdiction' includes -- (A) any
district court of the United States (including a magistrate
judge of such a court) or any United States court of appeals
that -- (i) has jurisdiction over the offense being
investigated; (ii) is in or for a district in which the provider
of a wire or electronic communication service is located or in
which the wire or electronic communications, records, or other
information are stored; or (iii) is acting on a request for
foreign assistance pursuant to section 3512 of this title").

contraband, fruits, or instrumentalities of criminal violations of 18 U.S.C. §§ 1029(a)(1)-(5) (access device fraud), 1028A (aggravated identity theft), 1343 (wire fraud), 1030 (computer intrusion), and 371 (conspiracy) (collectively, the "SUBJECT OFFENSES").

4.    The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from other FBI agents and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not purport to set forth all of my knowledge of or investigation into this matter.  Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

II.

## SUMMARY OF INVESTIGATION

5.    On November 29, 2012, the FBI executed a search warrant on the e-mail account moneypak82@yahoo.com.  E-mails obtained from that search warrant include numerous e-mails to other e-mail accounts containing stolen credit card numbers. One of the e-mail accounts to which stolen credit card numbers were sent was the SUBJECT ACCOUNT.

3

III.

**PROBABLE CAUSE**

6.   Based on my training and experience, I have learned the following:

a.   <u>Carding</u>:  "Carding" refers to various criminal activities associated with stealing personal identification information and financial information belonging to other individuals -- including the account numbers on their credit cards, bank cards, debit cards, or other access devices -- and using that information to obtain money, goods, or services without the victims' authorization or consent.  For example, a criminal might gain unauthorized access to (or "hack") a database maintained on a computer server and steal credit card numbers and other personal information.  The criminal can then use the stolen information to, among other things: (1) buy goods or services online; (2) manufacture counterfeit credit cards by encoding them with the stolen account information; (3) manufacture false identification documents (which can be used in turn to facilitate fraudulent purchases with the information); and (4) sell the information to others who intend to use the information for such purposes.  "Carding" refers to the foregoing criminal activity generally and encompasses a variety of federal offenses, including, but not limited to,

4

identification document fraud, aggravated identity theft, access device fraud, computer hacking, wire fraud, and bank fraud.

b.  <u>Card verification value codes</u>:  Card verification value code ("CVVC" or "CVV") is a security feature for credit or debit card transactions, providing increased protections for the merchants against credit card fraud.

7.  On November 29, 2012, United States Magistrate Judge Jean P. Rosenbluth authorized a search warrant to Yahoo! Inc. for the e-mail account moneypak82@yahoo.com.  A copy of my affidavit in support of this search warrant is attached hereto as Exhibit 1 and incorporated herein by reference.

8.  From reviewing e-mails provided by Yahoo! Inc. for the e-mail account moneypak82@yahoo.com, I learned that moneypak82@yahoo.com has sent e-mails containing over 269 unauthorized credit card numbers to the SUBJECT ACCOUNT.  The earliest such e-mail is dated October 7, 2012.

9.  Information obtained from AOL Inc. showed that the SUBJECT ACCOUNT was frequently accessed from IP address 76.79.72.174.  Information obtained from Time Warner showed that IP address 76.79.72.174 was registered to Chinese Laundry, an online retailer located in Los Angeles, California.  The Time Warner records show that the SUBJECT ACCOUNT was accessed over 200 times from IP address 76.79.72.174, with the last access on February 5, 2013.  I contacted Chinese Laundry and learned that

Chinese Laundry has an employee named Cordie Williams, the name reflected in the e-mail address of the SUBJECT ACCOUNT.

### IV.

### BACKGROUND REGARDING E-MAIL AND THE PROVIDER

10.   In my training and experience, I have learned that the PROVIDER provides a variety of online services, including e-mail, to the public.   The PROVIDER allows subscribers to obtain e-mail accounts at the domain name aol.com, like the SUBJECT ACCOUNT.   Subscribers obtain an account by registering with the PROVIDER.   During the registration process, the PROVIDER asks subscribers to provide basic personal information.   Therefore, the computers of the PROVIDER are likely to contain stored electronic communications and information concerning subscribers and their use of the PROVIDER's services, such as account access information, e-mail transaction information, and account application information.   In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the user(s) of the SUBJECT ACCOUNT.

11.   A subscriber of the PROVIDER can also store with the PROVIDER files in addition to e-mails, such as Buddy lists, AOL Address book, and content of AOL Calendars, Pictures, Private Journal, File Backup, Reminders, and other files, on servers maintained and/or owned by the PROVIDER.   In my training and

experience, evidence of who was using an e-mail account may be found in such information.

12.  In my training and experience, e-mail providers generally ask their subscribers to provide certain personal identifying information when registering for an e-mail account. Such information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative e-mail addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number).  In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the user(s) of the SUBJECT ACCOUNT.

13.  In my training and experience, e-mail providers typically retain certain transactional information about the creation and use of each account on their systems.  This information can include the date on which the account was created, the length of service, records of login (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other log files that reflect usage of the account.  In addition, e-mail providers often have records of the Internet Protocol

("IP") address used to register the account and the IP addresses associated with particular logins to the account.  Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the SUBJECT ACCOUNT.

14.  In my training and experience, e-mail account users will sometimes communicate directly with an e-mail service provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users.  E-mail providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications.  In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the user(s) of the SUBJECT ACCOUNT.

15.  I know from my training and experience that the complete contents of an e-mail account may be important to establishing the actual user who has dominion and control of that account at a given time.  E-mail accounts may be registered in false names or screen names from anywhere in the world with little to no verification by the service provider.  They may also be used by multiple people.  Given the ease with which e-

mail accounts may be created under aliases, and the rarity with which law enforcement has eyewitness testimony about a defendant's use of an e-mail account, investigators often have to rely on circumstantial evidence to show that an individual was the actual user of a particular account. Only by piecing together information contained in the contents of an account may an investigator establish who the actual user of an account was. Often those pieces will come from a time period before the account was used in the criminal activity. Limiting the scope of the search for information showing the actual user of the account would, in some instances, prevent the government from identifying the user of the account and, in other instances, prevent a defendant from suggesting that someone else was responsible. Therefore, the complete contents of a given account, including the e-mail addresses and messages sent to that account, often provides important evidence regarding the actual user's dominion and control of that account. For the purpose of searching for content demonstrating the actual user(s) of the SUBJECT ACCOUNT, I am requesting a warrant requiring the PROVIDER to turn over information associated with the SUBJECT ACCOUNT for a period beginning 90 days before the earliest e-mail sent to the SUBJECT ACCOUNT described above for review by the search team.

9

16. Relatedly, the government must be allowed to determine whether other individuals had access to the SUBJECT ACCOUNT. If the government were constrained to review only a small subsection of an e-mail account, that small subsection might give the misleading impression that only a single user had access to the account.

17. I also know based on my training and experience that criminals discussing their criminal activity may use slang, short forms (abbreviated words or phrases such as lol to express "laugh out loud"), or codewords (which require entire strings or series of e-mail conversations to determine their true meaning) when discussing their crimes. They can also discuss aspects of the crime without specifically mentioning the crime involved. In the electronic world, it is even possible to use pictures, images and emoticons (images used to express a concept or idea such as a happy face inserted into the content of an e-mail or the manipulation and combination of keys on the computer keyboard to convey an idea, such as the use of a colon and paren :) to convey a smile or agreement) to discuss matters. "Keyword searches" would not account for any of these possibilities, so actual review of the contents of an e-mail account by law enforcement personnel with information regarding the identified criminal activity, subject to the search procedures set forth in

10

Attachment B, is necessary to find all relevant evidence within the account.

18. As set forth Attachment B, I am requesting a warrant that permits the search team to keep the original production from the PROVIDER under seal until the investigation is completed and, if a case is brought, that case is completed through disposition, trial, appeal, or collateral proceeding.

a. I make that request because I believe it might be impossible for the PROVIDER to authenticate information taken from the SUBJECT ACCOUNT as its business record without the original production to examine. Even if the PROVIDER kept an original copy at the time of production (against which it could compare against the results of the search at the time of trial), the government cannot compel the PROVIDER to keep a copy for the entire pendency of the investigation and/or case. If the original production is destroyed, it may be impossible for the PROVIDER to examine a particular document found by the search team and confirm that it was a business record of the PROVIDER's taken from the SUBJECT ACCOUNT.

b. I also know from my training and experience that many e-mail accounts are purged as part of the ordinary course of business by providers. For example, if an e-mail account is not accessed within a specified time period, it -- and its contents -- may be deleted. As a consequence, there is a risk

that the only record of the contents of an e-mail account might

be the production that a provider makes to the government, for

example, if a defendant is incarcerated and does not (perhaps

cannot) access his or her e-mail account.  Preserving evidence,

therefore, would ensure that the government can satisfy its

Brady obligations and give the defendant access to evidence that

might be used in his or her defense.

V.

**REQUEST FOR NON-DISCLOSURE**

19.  Pursuant to 18 U.S.C. § 2705(b), I request that the

Court enter an order commanding the PROVIDER not to notify any

person, including the subscriber(s) of the SUBJECT ACCOUNT, of

the existence of the warrant because there is reason to believe

that such notification will result in: (1) flight from

prosecution; (2) destruction of or tampering with evidence;

(3) intimidation of potential witnesses; or (4) otherwise

seriously jeopardizing the investigation.  The full extent of the

current investigation described above is not public, and I know,

based on my training and experience, that credit card fraudsters

often will destroy digital evidence if the perpetrator learns of

an investigation.  In addition, if the PROVIDER or other person

notifies the targets of the investigation that a warrant has been

issued for the SUBJECT ACCOUNT, the unidentified perpetrators

12

will further mask their activity and seriously jeopardize the
investigation.

## VI.

### CONCLUSION

    20.  Based on the foregoing, I request that the Court issue
the proposed search warrant.

 

_____
CHRISTOPHER KAJFOSZ
Special Agent, FBI


Subscribed and sworn to before
me on April 10, 2013

_____
HONORABLE JEAN P. ROSENBLUTH
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

### PROPERTY TO BE SEARCHED

This warrant applies to information associated with the accounts identified as cordie_williams@aol.com that are stored at premises controlled by AOL Inc., a company that accepts service of legal process at 22000 AOL Way, Dulles, VA, 20166.

1

**ATTACHMENT B**

**ITEMS TO BE SEIZED**

I. **SEARCH PROCEDURE**

1.   The search warrant will be presented to personnel of Yahoo! Inc. (the "PROVIDER"), who will be directed to isolate the information described in Section II. below.

2.   To minimize any disruption of service to third parties, the PROVIDER's employees and/or law enforcement personnel trained in the operation of computers will create an exact duplicate of the information described in Section II. below.

3.   The PROVIDER's employees will provide in electronic form the exact duplicate of the information described in Section II. below to the agent who serves the search warrant.

4.   With respect to contents of wire and electronic communications produced by the PROVIDER (hereafter, "content records," see Section II.10.a below), law enforcement agents and/or individuals assisting law enforcement and acting at their direction (the "search team") will examine such content records pursuant to search procedures specifically designed to identify items to be seized under this warrant.   The search shall extract and seize only the specific items to be seized under this warrant (see Section III. below).   In conducting this search,

1

the search team shall take notes regarding how it conducts the search.

5.   If the search team encounters immediately apparent contraband or other evidence of a crime outside the scope of the items to be seized, the team shall immediately discontinue its search pending further order of the Court and shall make and retain notes detailing how the contraband or other evidence of a crime was encountered, including how it was immediately apparent contraband or evidence of a crime.

6.   The search team will complete its search of the content records as soon as is practicable but not to exceed 60 days from the date of receipt from the PROVIDER of the response to this warrant.  If additional time is needed, the government may seek an extension of this time period from the Court within the original 60-day period.

7.   Once the search team has completed its review of the content records and created copies of the items seized pursuant to the warrant, the original production from the PROVIDER will be sealed -- and preserved by the search team for authenticity and chain of custody purposes -- until further order of the Court.

8.   The special procedures relating to digital media found in this warrant govern only the search of digital media pursuant

2

to the authority conferred by this warrant and do not apply to any search of digital media pursuant to any other court order.

9. Pursuant to 18 U.S.C. § 2703(g) the presence of an agent is not required for service or execution of this warrant.

## II. INFORMATION TO BE DISCLOSED BY THE PROVIDER

10. To the extent that the information described in Attachment A is within the possession, custody, or control of the PROVIDER, including any information that has been deleted but is still available to the PROVIDER, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the PROVIDER is required to disclose the following information to the government for each SUBJECT ACCOUNT listed in Attachment A:

a. All contents of all wire and electronic communications associated with the SUBJECT ACCOUNT, including but not limited to:

i. For the time period of July 7, 2012, to the present, all e-mails associated with the SUBJECT ACCOUNT, including stored or preserved copies of e-mails sent to and from the account, draft e-mails, and deleted e-mails, as well as all header information associated with each e-mail.

ii. For the time period of July 7, 2012, to the present, all records or other information stored at any time by subscriber(s) of the SUBJECT ACCOUNT, including Buddy lists, AOL

3

Address book, and content of AOL Calendars, Pictures, Private
Journal, File Backup, Reminders, and other files.

   iii. For the time period of July 7, 2012, to the
present, all records pertaining to communications between the
PROVIDER and any person regarding the SUBJECT ACCOUNT, including
contacts with support services and records of actions taken.

  b. All user connection logs and transactional
information of all activity relating to the SUBJECT ACCOUNT
described above in Section II.10.a, including but not limited to
all log files, dates, times, durations, data transfer volumes,
methods of connection, IP addresses, ports, routing information,
dial-ups, and locations.

  c. All subscriber information pertaining to the
SUBJECT ACCOUNT, including but not limited to the date on which
the account was created, the length of service, types of service
utilized, account status, account settings, the IP address used
to register the account, login IP addresses associated with
session dates and times, the subscriber's full names, screen
names, other account names or e-mail addresses associated with
the account, telephone numbers, physical addresses, and other
identifying information regarding the subscriber, as well as
means and source of payment, including detailed billing records.

## III. INFORMATION TO BE SEIZED BY THE GOVERNMENT

11.   For each SUBJECT ACCOUNT listed in Attachment A, the search team may seize:

a.   All information described above in Section II.10.a that constitutes evidence, contraband, fruits, or instrumentalities of violations of 18 U.S.C. §§ 1029(a)(1)-(5) (access device fraud), 1028A (aggravated identity theft), 1343 (wire fraud), 1030 (computer intrusion), and 371 (conspiracy), occurring after July 7, 2012, namely:

i.   . Information relating to who created, accessed, or used the SUBJECT ACCOUNT, including records about their identities and whereabouts.

ii.   Records, documents, programs, applications, and materials containing or relating to personal identification information ("PII"), including Social Security numbers, driver's license numbers, personal identification numbers ("PINs"), passwords, mother's maiden names, credit card numbers, card verification value codes, bank account numbers, other financial account numbers, addresses, telephone numbers, dates of birth, and other vital records, for individuals other than Cordie Williams.

iii. Records, documents, programs, applications, and materials relating to carding or the trafficking of credit card numbers.

iv.   Records, documents, programs, applications, and materials relating to carding forum members or others engaged in the distribution or use of PII via the Internet.

v.   Records, documents, programs, applications, and materials relating to e-mail accounts used for carding activities.

~~vi.   Records, documents, programs, applications, and materials relating to craigslist.~~

vii.   Records, documents, programs, applications, and materials relating to skimming devices.

viii.   Records, documents, programs, applications, and materials relating to personal identification numbers ("PINs"), passwords, card verification values ("CVV"), or other security codes or features associated with credit cards or other access devices.

ix.   Records, documents, programs, applications, and materials relating to money transfer or payment processing companies, including Paypal.

x.   Records, documents, programs, applications, and materials relating to the transfer, sale, distribution, or use of PII.

xi.   Records, documents, programs, applications, and materials relating to payments made or received by any individual involved in the distribution or use of PII.

6

b.    All records and information described above in Sections II.10.b and II.10.c.

## IV.    PROVIDER PROCEDURES

12.    IT IS ORDERED that the PROVIDER shall deliver the information set forth in Section II. within 10 days of the service of this warrant.  The PROVIDER shall send such information to:

> SPECIAL AGENT CHRISTOPHER KAJFOSZ
> FEDERAL BUREAU OF INVESTIGATION
> 4000 WEST METROPOLITAN DRIVE, SUITE 200
> ORANGE, CA 92868
> TEL: (714) 939-3213
> FAX: (714) 939-3540
> Christopher.kajfosz@ic.fbi.gov

13.    IT IS FURTHER ORDERED that the PROVIDER shall provide the name and contact information for all employees who conduct the search and produce the records responsive to this warrant.

14.    IT IS FURTHER ORDERED that the PROVIDER shall not notify any person, including the subscriber(s) of each account identified in Attachment A, of the existence of the warrant.

# Exhibit

# 1

<u>A F F I D A V I T</u>

I, Christopher Kajfosz, being duly sworn, hereby state as follows:

## I.

### INTRODUCTION

1. I am a Special Agent ("SA") with the Federal Bureau of Investigation ("FBI"), and have been so employed for approximately two years. I am currently assigned to the FBI's Cybercrimes squad, where I specialize in the investigation of computer and high-technology crimes, including computer intrusions, denial of service attacks, and other types of malicious computer activity. During my career as an FBI Special Agent, I have participated in numerous computer crime investigations. In addition, I have received both formal and informal training from the FBI and other institutions regarding computer-related investigations and computer technology.

2. I make this affidavit in support of an application for a search warrant for information associated with the accounts identified as sellcc_hotandnew_no1@yahoo.com ("SUBJECT ACCOUNT #1") and moneypak82@yahoo.com ("SUBJECT ACCOUNT #2") (the "SUBJECT ACCOUNTS") that are stored at premises controlled by Yahoo! Inc. ("PROVIDER"), a provider of electronic communication and remote computing services, headquartered at 701 First

1

Avenue, Sunnyvale, California, 94089.[1]  The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), (b)(1)(A), and (c)(1)(A) to require the PROVIDER to disclose to the government copies of the information (including the content of communications) described in Section II. of Attachment B. Upon receipt of the information described in Section II. of Attachment B, law enforcement agents and/or individuals assisting law enforcement and acting at their direction will review that information to locate the items described in Section III. of Attachment B.

3.   As described more fully below, I respectfully submit there is probable cause to believe that the information associated with the SUBJECT ACCOUNTS constitutes evidence,

---

[1] Because this Court has jurisdiction over the offense(s) being investigated, it may issue the warrant to compel the PROVIDER pursuant to 18 U.S.C. §§ 2703(a), (b)(1)(A), (c)(1)(A).  See 18 U.S.C. §§ 2703(a) ("A governmental entity may require the disclosure by a provider . . . pursuant to a warrant issued using the procedures described in the Federal Rules of Criminal Procedure . . . by a court of competent jurisdiction") and 2711 ("the term 'court of competent jurisdiction' includes -- (A) any district court of the United States (including a magistrate judge of such a court) or any United States court of appeals that -- (i) has jurisdiction over the offense being investigated; (ii) is in or for a district in which the provider of a wire or electronic communication service is located or in which the wire or electronic communications, records, or other information are stored; or (iii) is acting on a request for foreign assistance pursuant to section 3512 of this title").

contraband, fruits, or instrumentalities of criminal violations of 18 U.S.C. §§ 1029(a)(1)-(5) (access device fraud), 1028A (aggravated identity theft), 1343 (wire fraud), 1030 (computer intrusion), and 371 (conspiracy) (collectively, the "SUBJECT OFFENSES").

4.   The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from other FBI agents and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not purport to set forth all of my knowledge of or investigation into this matter.  Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## II.

## SUMMARY OF INVESTIGATION

5.   After ISP records showed that theme park tickets purchased with a stolen credit card number were bought from a computer located at 4554 N. Banner Drive, Apartment 2, Long Beach, California, 90807, the FBI executed a federal search warrant at that location on October 2, 2012.  During the search the FBI seized computers, cellular telephones, and theme park tickets.  Among the items found on an iPhone seized at the

3

search location were e-mails from the SUBJECT ACCOUNTS which
contained stolen credit card numbers.

### III.

### PROBABLE CAUSE

6.  Based on my training and experience, I have learned
the following:

a.  Carding:  "Carding" refers to various criminal
activities associated with stealing personal identification
information and financial information belonging to other
individuals -- including the account numbers on their credit
cards, bank cards, debit cards, or other access devices -- and
using that information to obtain money, goods, or services
without the victims' authorization or consent.  For example, a
criminal might gain unauthorized access to (or "hack") a
database maintained on a computer server and steal credit card
numbers and other personal information.  The criminal can then
use the stolen information to, among other things: (1) buy goods
or services online; (2) manufacture counterfeit credit cards by
encoding them with the stolen account information; (3)
manufacture false identification documents (which can be used in
turn to facilitate fraudulent purchases with the information);
and (4) sell the information to others who intend to use the
information for such purposes.  "Carding" refers to the
foregoing criminal activity generally and encompasses a variety

4

of federal offenses, including, but not limited to,
identification document fraud, aggravated identity theft, access
device fraud, computer hacking, wire fraud, and bank fraud.

      b.   <u>Card verification value codes</u>:  Card verification
value code ("CVVC" or "CVV") is a security feature for credit or
debit card transactions, providing increased protections for the
merchants against credit card fraud.

    7.   On October 2, 2012, the FBI executed a federal search
warrant issued by United States Magistrate Judge Jean P.
Rosenbluth at 4554 N. Banner Drive, Apartment #2, Long Beach, CA
90807.  A copy of the affidavit sworn by Special Agent Mark
Burnett in support of that search warrant is attached hereto as
Exhibit A.

    8.   During the execution of the search warrant, FBI agents
interviewed the occupants of 4554 N. Banner Drive, Apartment #2.
I have reviewed the FBI 302s of those interviews as well as the
FBI 302s relating to the execution of the search warrant.  From
my review of those FBI 302s, I learned the following:

      a.   Lamarr Ramsey was one of the residents of 4554 N.
Banner Drive, Apartment #2.

      b.   Ramsey identified a photograph of the person who
sold Knott's Berry Farm tickets to an undercover FBI agent as
"Gotti."

    c.   Ramsey admitted that "Gotti" comes over to his apartment to work on music and hang out. Ramsey indicated that "Gotti" has used the computer at Ramsey's apartment.

    d.   An iPhone 5 belonging to Ramsey was one of the items seized during execution of the search warrant.

    9.   On November 2, 2012, I reviewed Ramsey's iPhone. From my review of the iPhone I learned the following:

    a.   The iPhone contained e-mails received from the e-mail account sellcc_hotandnew_no1@yahoo.com (SUBJECT ACCOUNT #1).

    b.   On August 16, 2012, an e-mail containing 18 credit card numbers was received from SUBJECT ACOUNT #1, which included addresses, credit card expiration dates, and card verification value codes. None of the addresses appeared to be related to the user of the iPhone, such as 4554 N. Banner Drive, Apartment 2, Long Beach, CA, 90807.

    c.   On August 17, 2012, an e-mail containing nine credit card numbers was received from SUBJECT ACCOUNT #1 with addresses, credit card expiration dates, and card verification value codes. None of the addresses appeared to be related to the user of the iPhone, such as 4554 N. Banner Drive, Apartment 2, Long Beach, CA, 90807.

    d.   On August 25, 2012, an e-mail containing 17 credit card numbers was received from SUBJECT ACCOUNT #1 with

addresses, credit card expiration dates, and card verification value codes.  None of the addresses appeared to be related to the user of the iPhone, such as 4554 N. Banner Drive, Apartment 2, Long Beach, CA, 90807.

    e.   A Discover credit card number belonging to Krista Hardin was one of the credit card numbers located in an e-mail from SUBJECT ACCOUNT #1 on Ramsey's iPhone.

    10.   On November 5, 2012, I reviewed the tickets purchased by the undercover FBI special agent on August 24, 2012.  From those tickets I learned the following:

    a.   A Discover credit card number belonging to Hardin was used to purchase the six Knott's Berry Farm tickets re-sold to the undercover FBI Agent.

    b.   Each of the six tickets was registered to a different name, respectively; karen, john, tina, robert, sam and, megan.

    c.   The purchaser for all six tickets was Krista Hardin.

    d.   The method of payment for all six tickets was Discover Card.

    e.   The confirmation number for all six tickets was 52263748.

    f.   All six tickets were purchased on August 23, 2012.

11.   On September 11, 2012, Krista Hardin was interviewed via telephone.  During that interview Hardin said she did not purchase any Knott's Berry Farm tickets with her Discover Card, she did not authorize anyone to purchase tickets with her Discover Card, and she did not provide her Discover Card account information to anyone for purchasing tickets.

12.   On November 2, 2012, I reviewed the same iPhone taken from the address above.  From the review of the iPhone I learned the following:

a.   The iPhone also contained e-mails received from the e-mail account moneypak82@yahoo.com (SUBJECT ACCOUNT #2).

b.   On September 27, 2012, 13 credit card numbers were received from SUBJECT ACCOUNT #2 with addresses, credit card expiration dates, and card verification value codes.  None of the addresses appeared to be associated with the user of the iPhone, such as 4554 N. Banner Drive, Apartment 2, Long Beach, CA, 90807.

c.   A Discover credit card number belonging to victim Steven Petifurd was one of the credit card numbers sent via SUBJECT ACCOUNT #2.  According to information obtained from Knott's Berry Farm, Petifurd's Discover credit card was used to purchase e-tickets.

13.   On November 1, 2012, Steven Petifurd was interviewed via telephone.  During that interview Petifurd said he did not

8

purchase any Knott's Berry Farm tickets with his Discover credit card, he did not authorize anyone to purchase tickets with his Discover credit card, and he did not provide his Discover credit card account information to anyone for purchasing tickets.

IV.

BACKGROUND REGARDING E-MAIL AND THE PROVIDER

14.   In my training and experience, I have learned that the PROVIDER provides a variety of online services, including e-mail, to the public.  The PROVIDER allows subscribers to obtain e-mail accounts at the domain name yahoo.com, like the SUBJECT ACCOUNTS.  Subscribers obtain an account by registering with the PROVIDER.  During the registration process, the PROVIDER asks subscribers to provide basic personal information.  Therefore, the computers of the PROVIDER are likely to contain stored electronic communications and information concerning subscribers and their use of the PROVIDER's services, such as account access information, e-mail transaction information, and account application information.  In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the user(s) of the SUBJECT ACCOUNTS.

15.   A subscriber of the PROVIDER can also store with the PROVIDER files in addition to e-mails, such as Flickr contents, Yahoo! Group activity logs, Yahoo! Group content, Yahoo!

9

Chat/Instant Messenger logs, pictures, and other files, on servers maintained and/or owned by the PROVIDER.  In my training and experience, evidence of who was using an e-mail account may be found in such information.

16.  In my training and experience, e-mail providers generally ask their subscribers to provide certain personal identifying information when registering for an e-mail account. Such information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative e-mail addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number).  In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the user(s) of the SUBJECT ACCOUNTS.

17.  In my training and experience, e-mail providers typically retain certain transactional information about the creation and use of each account on their systems.  This information can include the date on which the account was created, the length of service, records of login (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other

10

log files that reflect usage of the account. In addition, e-mail providers often have records of the Internet Protocol ("IP") address used to register the account and the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the SUBJECT ACCOUNTS.

18. In my training and experience, e-mail account users will sometimes communicate directly with an e-mail service provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. E-mail providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the user(s) of the SUBJECT ACCOUNTS.

19. I know from my training and experience that the contents of an e-mail account may be important to establishing the actual user who has dominion and control of that account at a given time. E-mail accounts may be registered in false names or screen names from anywhere in the world with little to no

11

verification by the service provider. They may also be used by multiple people. Given the ease with which e-mail accounts may be created under aliases, and the rarity with which law enforcement has eyewitness testimony about a defendant's use of an e-mail account, investigators often have to rely on circumstantial evidence to show that an individual was the actual user of a particular account. Only by piecing together information contained in the contents of an account may an investigator establish who the actual user of an account was. Often those pieces will come from a time period before the account was used in the criminal activity. Limiting the scope of the search for information showing the actual user of the account would, in some instances, prevent the government from identifying the user of the account and, in other instances, prevent a defendant from suggesting that someone else was responsible. Therefore, the complete contents of a given account, including the e-mail addresses and messages sent to that account, often provides important evidence regarding the actual user's dominion and control of that account. For the purpose of searching for content demonstrating the actual user(s) of the SUBJECT ACCOUNTS, I am requesting a warrant requiring the PROVIDER to turn over information associated with the SUBJECT ACCOUNTS for a period beginning 90 days before the

12

earliest e-mail sent from the SUBJECT ACCOUNTS described above for review by the search team.

20.  Relatedly, the government must be allowed to determine whether other individuals had access to the SUBJECT ACCOUNTS. If the government were constrained to review only a small subsection of an e-mail account, that small subsection might give the misleading impression that only a single user had access to the account.

21.  I also know based on my training and experience that criminals discussing their criminal activity may use slang, short forms (abbreviated words or phrases such as lol to express "laugh out loud"), or codewords (which require entire strings or series of e-mail conversations to determine their true meaning) when discussing their crimes.  They can also discuss aspects of the crime without specifically mentioning the crime involved. In the electronic world, it is even possible to use pictures, images and emoticons (images used to express a concept or idea such as a happy face inserted into the content of an e-mail or the manipulation and combination of keys on the computer keyboard to convey an idea, such as the use of a colon and paren :) to convey a smile or agreement) to discuss matters.  "Keyword searches" would not account for any of these possibilities, so actual review of the contents of an e-mail account by law enforcement personnel with information regarding the identified

criminal activity, subject to the search procedures set forth in Attachment B, is necessary to find all relevant evidence within the account.

22. As set forth Attachment B, I am requesting a warrant that permits the search team to keep the original production from the PROVIDER under seal until the investigation is completed and, if a case is brought, that case is completed through disposition, trial, appeal, or collateral proceeding.

a. I make that request because I believe it might be impossible for the PROVIDER to authenticate information taken from the SUBJECT ACCOUNTS as its business record without the original production to examine. Even if the PROVIDER kept an original copy at the time of production (against which it could compare against the results of the search at the time of trial), the government cannot compel the PROVIDER to keep a copy for the entire pendency of the investigation and/or case. If the original production is destroyed, it may be impossible for the PROVIDER to examine a particular document found by the search team and confirm that it was a business record of the PROVIDER's taken from the SUBJECT ACCOUNTS.

b. I also know from my training and experience that many e-mail accounts are purged as part of the ordinary course of business by providers. For example, if an e-mail account is not accessed within a specified time period, it -- and its

contents -- may be deleted.  As a consequence, there is a risk

that the only record of the contents of an e-mail account might

be the production that a provider makes to the government, for

example, if a defendant is incarcerated and does not (perhaps

cannot) access his or her e-mail account.  Preserving evidence,

therefore, would ensure that the government can satisfy its

Brady obligations and give the defendant access to evidence that

might be used in his or her defense.

V.

REQUEST FOR NON-DISCLOSURE

23.  Pursuant to 18 U.S.C. § 2705(b), I request that the

Court enter an order commanding the PROVIDER not to notify any

person, including the subscriber(s) of the SUBJECT ACCOUNTS, of

the existence of the warrant because there is reason to believe

that such notification will result in: (1) flight from

prosecution; (2) destruction of or tampering with evidence;

(3) intimidation of potential witnesses; or (4) otherwise

seriously jeopardizing the investigation.  The full extent of the

current investigation described above is not public, and I know,

based on my training and experience, that credit card fraudsters

often will destroy digital evidence if the perpetrator learns of

an investigation.  In addition, if the PROVIDER or other person

notifies the targets of the investigation that a warrant has been

issued for the SUBJECT ACCOUNTS, the unidentified perpetrators

15

will further mask their activity and seriously jeopardize the investigation.

VI.

CONCLUSION

24.  Based on the foregoing, I request that the Court issue the proposed search warrant.

/s/
_____
CHRISTOPHER KAJFOSZ
Special Agent, FBI

Subscribed and sworn to before
me on November 29, 2012

**JEAN P. ROSENBLUTH**
_____
HONORABLE JEAN P. ROSENBLUTH
UNITED STATES MAGISTRATE JUDGE

ORIGINAL

AO 93 (Rev. 12/09) Search and Seizure Warrant  (USAO CDCA Rev. 01/2013)

# UNITED STATES DISTRICT COURT
for the
Central District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br>Information associated with the account[s] identified as<br>SEE ATTACHMENT A that is stored at premises<br>controlled by Google, Inc. | )<br>)<br>)  Case No.  **SA13-145M**<br>)<br>)<br>) |

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____Northern_____ District of _____California_____ *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:

See Attachment B

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property.

**YOU ARE COMMANDED** to execute this warrant on or before _____14 days from the date of its issuance_____
*(not to exceed 14 days)*

☑ in the daytime 6:00 a.m. to 10 p.m.     ☐ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to United States Magistrate Judge on duty at the time of the return through a filing with the Clerk's Office.
*(name)*

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)* ☐ for _____ days *(not to exceed 30)*.
☐ until, the facts justifying, the later specific date of _____

JEAN P. ROSENBLUTH

Date and time issued:     4/15/13  1:15 pm          *Judge's signature*

City and state:   Santa Ana, California          Hon. Jean P. Rosenbluth, U.S. Magistrate Judge
*Printed name and title*

AUSA: Douglas F. McCormick

EXHIBIT
3

*AO 93  (Rev. 12/09) Search and Seizure Warrant (Page 2)*

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant ~~and inventory~~ left with: |

| Inventory made in the presence of : |
|---|

**Inventory of the property taken and name of any person(s) seized:**
[Please provide a description that would be sufficient to demonstrate that the items seized fall within the items authorized to be seized pursuant to the warrant (e.g., type of documents, as opposed to "miscellaneous documents") as well as the approximate volume of any documents seized (e.g., number of boxes).  If reference is made to an attached description of property, specify the number of pages to the attachment and any case number appearing thereon.]

*Certification* (by officer present during the execution of the warrant)

*I declare under penalty of perjury that I am an officer who executed this warrant and that this inventory is correct and was returned along with the original warrant to the designated judge through a filing with the Clerk's Office.*

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## A F F I D A V I T

I, Mark Burnett, being duly sworn, hereby state as follows:

### I.

### INTRODUCTION

1.    I am a Special Agent ("SA") with the Federal Bureau of Investigation ("FBI"), and have been so employed for approximately seven years.  I am currently assigned to the FBI's Cybercrimes squad, where I specialize in the investigation of computer and high-technology crimes, including computer intrusions, denial of service attacks, and other types of malicious computer activity.  During my career as an FBI Special Agent, I have participated in numerous computer crime investigations.  In addition, I have received both formal and informal training from the FBI and other institutions regarding computer-related investigations and computer technology.

2.    I make this affidavit in support of an application for a search warrant for information associated with the accounts identified as makethatgreen100@gmail.com ("SUBJECT ACCOUNT 1"), mzjocker@gmail.com ("SUBJECT ACCOUNT 2"), freddyreyes1982@gmail.com ("SUBJECT ACCOUNT 3"), krystaladkins83@gmail.com ("SUBJECT ACCOUNT 4"), funnpark@gmail.com ("SUBJECT ACCOUNT 5"), andersonc808@gmail.com ("SUBJECT ACCOUNT 6"), getitinn2010@gmail.com ("SUBJECT ACCOUNT 7"), gooddollaz75@gmail.com ("SUBJECT ACCOUNT 8"),

th3on31@gmail.com ("SUBJECT ACCOUNT 9"), and wst730@gmail.com

("SUBJECT ACCOUNT 10") (collectively, the "SUBJECT ACCOUNTS")

that are stored at premises controlled by Google, Inc.

("PROVIDER"), a provider of electronic communication and remote

computing services, headquartered at 1600 Amphitheatre Parkway,

Mountain View, California.[1]

3.     The information to be searched is described in the

following paragraphs and in Attachment A.  This affidavit is

made in support of an application for a search warrant under 18

U.S.C. §§ 2703(a), (b)(1)(A), and (c)(1)(A) to require the

PROVIDER to disclose to the government copies of the information

(including the content of communications) described in

Section II of Attachment B.  Upon receipt of the information

described in Section II of Attachment B, law enforcement agents

and/or individuals assisting law enforcement and acting at their

---

[1] Because this Court has jurisdiction over the offense(s) being
investigated, it may issue the warrant to compel the PROVIDER
pursuant to 18 U.S.C. §§ 2703(a), (b)(1)(A), (c)(1)(A).  See 18
U.S.C. §§ 2703(a) ("A governmental entity may require the
disclosure by a provider . . . pursuant to a warrant issued
using the procedures described in the Federal Rules of Criminal
Procedure . . . by a court of competent jurisdiction") and 2711
("the term 'court of competent jurisdiction' includes -- (A) any
district court of the United States (including a magistrate
judge of such a court) or any United States court of appeals
that -- (i) has jurisdiction over the offense being
investigated; (ii) is in or for a district in which the provider
of a wire or electronic communication service is located or in
which the wire or electronic communications, records, or other
information are stored; or (iii) is acting on a request for
foreign assistance pursuant to section 3512 of this title").

direction will review that information to locate the items described in Section III of Attachment B.

4.    As described more fully below, I respectfully submit there is probable cause to believe that the information associated with the SUBJECT ACCOUNTS constitutes evidence, contraband, fruits, or instrumentalities of criminal violations of 18 U.S.C. §§ 1029(a)(1)-(5) (access device fraud), 1028A (aggravated identity theft), 1343 (wire fraud), 1030 (computer intrusion), and 371 (conspiracy) (collectively, the "SUBJECT OFFENSES").

5.    The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from other FBI agents and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not purport to set forth all of my knowledge of or investigation into this matter.  Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## II.

## SUMMARY OF INVESTIGATION

6.    On November 29, 2012, the FBI executed search warrants on the e-mail accounts moneypak82@yahoo.com and sellcc_hotandnew_no1@yahoo.com.  E-mails obtained from those

3

search warrants include numerous e-mails containing stolen

credit card numbers sent to other e-mail accounts.  The SUBJECT

ACCOUNTS all received e-mails containing stolen credit card

numbers from either moneypak82@yahoo.com or

sellcc_hotandnew_no1@yahoo.com.

### III.

### PROBABLE CAUSE

7.  On November 29, 2012, United States Magistrate Judge

Jean P. Rosenbluth authorized a search warrant to Yahoo! Inc.

for the e-mail accounts moneypak82@yahoo.com and

sellcc_hotandnew_no1@yahoo.com.  A copy of Special Agent

Christopher Kajfosz's affidavit in support of that search

warrant is attached hereto as Exhibit 1 and incorporated herein

by reference.

8.  From reviewing e-mails and stored chat sessions

provided by Yahoo! Inc. for the e-mail account

moneypak82@yahoo.com, I learned that the following SUBJECT

ACCOUNTS have received stolen credit card numbers from

moneypak82@yahoo.com as follows:

a.  SUBJECT ACCOUNT 1 received approximately 97

different credit card numbers, as well as accompanying personal

information for the true card holder.

b. SUBJECT ACCOUNT 2 received approximately 35 different credit card account numbers, as well as accompanying personal information for the true card holder.

c. SUBJECT ACCOUNT 3 received approximately 41 different credit card numbers, as well as accompanying personal information for the true card holder.

d. SUBJECT ACCOUNT 4 received approximately 8 different credit card numbers, as well as accompanying personal information for the true card holder.

9. From reviewing e-mails and stored chat sessions provided by Yahoo! Inc. for the e-mail account sellcc_hotandnew_no1@yahoo.com, I learned that the following SUBJECT ACCOUNTS have received stolen credit card numbers from sellcc_hotandnew_no1@yahoo.com as follows:

a. SUBJECT ACCOUNT 5 received approximately 938 different credit card numbers, as well as accompanying personal information for the true card holder.

b. SUBJECT ACCOUNT 6 received approximately 566 different credit card numbers, as well as accompanying personal information for the true card holder.

c. SUBJECT ACCOUNT 7 received approximately 564 different credit card numbers, as well as accompanying personal information for the true card holder.

d. SUBJECT ACCOUNT 8 received approximately 10 different credit card numbers, as well as accompanying personal information for the true card holder.

e. SUBJECT ACCOUNT 9 received approximately 77 different credit card numbers, as well as accompanying personal information for the true card holder.

f. SUBJECT ACCOUNT 10 received approximately 81 different credit card numbers, as well as accompanying personal information for the true card holder.

10. The earliest such e-mail sent by moneypak82@yahoo.com and sellcc_hotandnew_no1@yahoo.com which contained stolen credit card numbers was September 29, 2012, and May 16, 2012, respectively.

IV.

## BACKGROUND REGARDING E-MAIL AND THE PROVIDER

11. In my training and experience, I have learned that the PROVIDER provides a variety of online services, including e-mail, to the public. The PROVIDER allows subscribers to obtain e-mail accounts at the domain name aol.com, like the SUBJECT ACCOUNTS. Subscribers obtain an account by registering with the PROVIDER. During the registration process, the PROVIDER asks subscribers to provide basic personal information. Therefore, the computers of the PROVIDER are likely to contain stored electronic communications and information concerning subscribers

and their use of the PROVIDER's services, such as account access
information, e-mail transaction information, and account
application information.  In my training and experience, such
information may constitute evidence of the crimes under
investigation because the information can be used to identify
the user(s) of the SUBJECT ACCOUNTS.

12.  A subscriber of the PROVIDER can also store with the
PROVIDER files in addition to e-mails, such as Flickr contents,
Yahoo! Group activity logs, Yahoo! Group content, Yahoo!
Chat/Instant Messenger logs, pictures, and other files, on
servers maintained and/or owned by the PROVIDER.  In my training
and experience, evidence of who was using an e-mail account may
be found in such information.

13.  In my training and experience, e-mail providers
generally ask their subscribers to provide certain personal
identifying information when registering for an e-mail account.
Such information can include the subscriber's full name,
physical address, telephone numbers and other identifiers,
alternative e-mail addresses, and, for paying subscribers, means
and source of payment (including any credit or bank account
number).  In my training and experience, such information may
constitute evidence of the crimes under investigation because
the information can be used to identify the user(s) of the
SUBJECT ACCOUNTS.

14.   In my training and experience, e-mail providers
typically retain certain transactional information about the
creation and use of each account on their systems.  This
information can include the date on which the account was
created, the length of service, records of login (i.e., session)
times and durations, the types of service utilized, the status
of the account (including whether the account is inactive or
closed), the methods used to connect to the account (such as
logging into the account via the provider's website), and other
log files that reflect usage of the account.  In addition, e-
mail providers often have records of the Internet Protocol
("IP") address used to register the account and the IP addresses
associated with particular logins to the account.  Because every
device that connects to the Internet must use an IP address, IP
address information can help to identify which computers or
other devices were used to access the SUBJECT ACCOUNTS.

15.   In my training and experience, e-mail account users
will sometimes communicate directly with an e-mail service
provider about issues relating to the account, such as technical
problems, billing inquiries, or complaints from other users.  E-
mail providers typically retain records about such
communications, including records of contacts between the user
and the provider's support services, as well records of any
actions taken by the provider or user as a result of the

communications.  In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the user(s) of the SUBJECT ACCOUNTS.

11.  I know from my training and experience that the complete contents of an e-mail account may be important to establishing the actual user who has dominion and control of that account at a given time.  E-mail accounts may be registered in false names or screen names from anywhere in the world with little to no verification by the service provider.  They may also be used by multiple people.  Given the ease with which e-mail accounts may be created under aliases, and the rarity with which law enforcement has eyewitness testimony about a defendant's use of an e-mail account, investigators often have to rely on circumstantial evidence to show that an individual was the actual user of a particular account.  Only by piecing together information contained in the contents of an account may an investigator establish who the actual user of an account was. Often those pieces will come from a time period before the account was used in the criminal activity.  Limiting the scope of the search for information showing the actual user of the account would, in some instances, prevent the government from identifying the user of the account and, in other instances, prevent a defendant from suggesting that someone else was

9

responsible.  Therefore, the complete contents of a given
account, including the e-mail addresses and messages sent to
that account, often provides important evidence regarding the
actual user's dominion and control of that account.  For the
purpose of searching for content demonstrating the actual
user(s) of the SUBJECT ACCOUNTS, I am requesting a warrant
requiring the PROVIDER to turn over information associated with
the SUBJECT ACCOUNT for a period beginning on May 1, 2012.

16.  Relatedly, the government must be allowed to determine
whether other individuals had access to the SUBJECT ACCOUNTS.
If the government were constrained to review only a small
subsection of an e-mail account, that small subsection might
give the misleading impression that only a single user had
access to the account.

17.  I also know based on my training and experience that
criminals discussing their criminal activity may use slang,
short forms (abbreviated words or phrases such as lol to express
"laugh out loud"), or codewords (which require entire strings or
series of e-mail conversations to determine their true meaning)
when discussing their crimes.  They can also discuss aspects of
the crime without specifically mentioning the crime involved.
In the electronic world, it is even possible to use pictures,
images and emoticons (images used to express a concept or idea
such as a happy face inserted into the content of an e-mail or

the manipulation and combination of keys on the computer
keyboard to convey an idea, such as the use of a colon and paren
:) to convey a smile or agreement) to discuss matters.  "Keyword
searches" would not account for any of these possibilities, so
actual review of the contents of an e-mail account by law
enforcement personnel with information regarding the identified
criminal activity, subject to the search procedures set forth in
Attachment B, is necessary to find all relevant evidence within
the account.

18.  As set forth Attachment B, I am requesting a warrant
that permits the search team to keep the original production
from the PROVIDER under seal until the investigation is
completed and, if a case is brought, that case is completed
through disposition, trial, appeal, or collateral proceeding.

a.   I make that request because I believe it might be
impossible for the PROVIDER to authenticate information taken
from the SUBJECT ACCOUNTS as its business record without the
original production to examine.  Even if the PROVIDER kept an
original copy at the time of production (against which it could
compare against the results of the search at the time of trial),
the government cannot compel the PROVIDER to keep a copy for the
entire pendency of the investigation and/or case.  If the
original production is destroyed, it may be impossible for the
PROVIDER to examine a particular document found by the search

11

team and confirm that it was a business record of the PROVIDER's taken from the SUBJECT ACCOUNTS.

b.   I also know from my training and experience that many e-mail accounts are purged as part of the ordinary course of business by providers.  For example, if an e-mail account is not accessed within a specified time period, it -- and its contents -- may be deleted.  As a consequence, there is a risk that the only record of the contents of an e-mail account might be the production that a provider makes to the government, for example, if a defendant is incarcerated and does not (perhaps cannot) access his or her e-mail account.  Preserving evidence, therefore, would ensure that the government can satisfy its <u>Brady</u> obligations and give the defendant access to evidence that might be used in his or her defense.

V.

<u>REQUEST FOR NON-DISCLOSURE</u>

19.   Pursuant to 18 U.S.C. § 2705(b), I request that the Court enter an order commanding the PROVIDER not to notify any person, including the subscriber(s) of the SUBJECT ACCOUNTS, of the existence of the warrant because there is reason to believe that such notification will result in: (1) flight from prosecution; (2) destruction of or tampering with evidence; (3) intimidation of potential witnesses; or (4) otherwise seriously jeopardizing the investigation.  The full extent of the

current investigation described above is not public, and I know, based on my training and experience, that credit card fraudsters often will destroy digital evidence if the perpetrator learns of an investigation.  In addition, if the PROVIDER or other person notifies the targets of the investigation that a warrant has been issued for the SUBJECT ACCOUNTS, the unidentified perpetrators will further mask their activity and seriously jeopardize the investigation.

## VI.

## CONCLUSION

20.  Based on the foregoing, I request that the Court issue the proposed search warrant.

MARK BURNETT
Special Agent, FBI

Subscribed and sworn to before
me on April 15th, 2013

HONORABLE JEAN P. ROSENBLUTH
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

### PROPERTY TO BE SEARCHED

This warrant applies to information associated with the accounts identified as makethatgreen100@gmail.com, mzjocker@gmail.com, freddyreyes1982@gmail.com, krystaladkins83@gmail.com, funnpark@gmail.com, andersonc808@gmail.com, getitinn2010@gmail.com, gooddollaz75@gmail.com, th3on31@gmail.com, and wst730@gmail.com that are stored at premises controlled by Google, Inc., a company that accepts service of legal process at 1600 Amphitheatre Parkway, Mountain View, California.

**ATTACHMENT B**

**ITEMS TO BE SEIZED**

I.   **SEARCH PROCEDURE**

1.   The search warrant will be presented to personnel of Google, Inc. (the "PROVIDER"), who will be directed to isolate the information described in Section II. below.

2.   To minimize any disruption of service to third parties, the PROVIDER's employees and/or law enforcement personnel trained in the operation of computers will create an exact duplicate of the information described in Section II. below.

3.   The PROVIDER's employees will provide in electronic form the exact duplicate of the information described in Section II. below to the agent who serves the search warrant.

4.   With respect to contents of wire and electronic communications produced by the PROVIDER (hereafter, "content records," see Section II.10.a below), law enforcement agents and/or individuals assisting law enforcement and acting at their direction (the "search team") will examine such content records pursuant to search procedures specifically designed to identify items to be seized under this warrant.  The search shall extract and seize only the specific items to be seized under this warrant (see Section III. below).  In conducting this search,

1

the search team shall take notes regarding how it conducts the search.

5.   If the search team encounters immediately apparent contraband or other evidence of a crime outside the scope of the items to be seized, the team shall immediately discontinue its search pending further order of the Court and shall make and retain notes detailing how the contraband or other evidence of a crime was encountered, including how it was immediately apparent contraband or evidence of a crime.

6.   The search team will complete its search of the content records as soon as is practicable but not to exceed 60 days from the date of receipt from the PROVIDER of the response to this warrant.  If additional time is needed, the government may seek an extension of this time period from the Court within the original 60-day period.

7.   Once the search team has completed its review of the content records and created copies of the items seized pursuant to the warrant, the original production from the PROVIDER will be sealed -- and preserved by the search team for authenticity and chain of custody purposes -- until further order of the Court.

8.   The special procedures relating to digital media found in this warrant govern only the search of digital media pursuant

2

to the authority conferred by this warrant and do not apply to any search of digital media pursuant to any other court order.

9.   Pursuant to 18 U.S.C. § 2703(g) the presence of an agent is not required for service or execution of this warrant.

## II.   INFORMATION TO BE DISCLOSED BY THE PROVIDER

10.   To the extent that the information described in Attachment A is within the possession, custody, or control of the PROVIDER, including any information that has been deleted but is still available to the PROVIDER, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the PROVIDER is required to disclose the following information to the government for each SUBJECT ACCOUNT listed in Attachment A:

a.   All contents of all wire and electronic communications associated with the SUBJECT ACCOUNT, including but not limited to:

i.   For the time period of May 1, 2012, to the present, all e-mails associated with the SUBJECT ACCOUNT, including stored or preserved copies of e-mails sent to and from the account, draft e-mails, and deleted e-mails, as well as all header information associated with each e-mail.

ii.   For the time period of May 1, 2012, to the present, all records or other information stored at any time by subscriber(s) of the SUBJECT ACCOUNT, including Google Photos,

Google+, Google Chat logs, Google Groups content and other files.

   iii. For the time period of May 1, 2012, to the present, all records pertaining to communications between the PROVIDER and any person regarding the SUBJECT ACCOUNT, including contacts with support services and records of actions taken.

  b. All user connection logs and transactional information of all activity relating to the SUBJECT ACCOUNT described above in Section II.10.a, including but not limited to all log files, dates, times, durations, data transfer volumes, methods of connection, IP addresses, ports, routing information, dial-ups, and locations.

  c. All subscriber information pertaining to the SUBJECT ACCOUNT, including but not limited to the date on which the account was created, the length of service, types of service utilized, account status, account settings, the IP address used to register the account, login IP addresses associated with session dates and times, the subscriber's full names, screen names, other account names or e-mail addresses associated with the account, telephone numbers, physical addresses, and other identifying information regarding the subscriber, as well as means and source of payment, including detailed billing records.

## III. INFORMATION TO BE SEIZED BY THE GOVERNMENT

11. For each SUBJECT ACCOUNT listed in Attachment A, the search team may seize:

a. All information described above in Section II.10.a that constitutes evidence, contraband, fruits, or instrumentalities of violations of 18 U.S.C. §§ 1029(a)(1)-(5) (access device fraud), 1028A (aggravated identity theft), 1343 (wire fraud), 1030 (computer intrusion), and 371 (conspiracy), occurring after May 1, 2012, namely:

i. Information relating to who created, accessed, or used the SUBJECT ACCOUNT, including records about their identities and whereabouts.

ii. Records, documents, programs, applications, and materials containing or relating to personal identification information ("PII"), including Social Security numbers, driver's license numbers, personal identification numbers ("PINs"), passwords, mother's maiden names, credit card numbers, card verification value codes, bank account numbers, other financial account numbers, addresses, telephone numbers, dates of birth, and other vital records, for individuals other than Lamarr Ramsey.

iii. Records, documents, programs, applications, and materials relating to carding or the trafficking of credit card numbers.

          iv.  Records, documents, programs, applications, and materials relating to carding forum members or others engaged in the distribution or use of PII via the Internet.

          v.  Records, documents, programs, applications, and materials relating to e-mail accounts used for carding activities.

          vi.  Records, documents, programs, applications, and materials relating to skimming devices.

          vii. Records, documents, programs, applications, and materials relating to personal identification numbers ("PINs"), passwords, card verification values ("CVV"), or other security codes or features associated with credit cards or other access devices.

          viii.   Records, documents, programs, applications, and materials relating to money transfer or payment processing companies, including Paypal.

          ix.  Records, documents, programs, applications, and materials relating to the transfer, sale, distribution, or use of PII.

          x.  Records, documents, programs, applications, and materials relating to payments made or received by any individual involved in the distribution or use of PII.

          b.  All records and information described above in Sections II.10.b and II.10.c.

6

## IV.   PROVIDER PROCEDURES

12.   IT IS ORDERED that the PROVIDER shall deliver the information set forth in Section II. within 10 days of the service of this warrant.   The PROVIDER shall send such information to:

> SPECIAL AGENT CHRISTOPHER KAJFOSZ
> FEDERAL BUREAU OF INVESTIGATION
> 4000 WEST METROPOLITAN DRIVE, SUITE 200
> ORANGE, CA 92868
> TEL: (714) 939-3213
> FAX: (714) 939-3540
> Christopher.kajfosz@ic.fbi.gov

13.   IT IS FURTHER ORDERED that the PROVIDER shall provide the name and contact information for all employees who conduct the search and produce the records responsive to this warrant.

14.   IT IS FURTHER ORDERED that the PROVIDER shall not notify any person, including the subscriber(s) of each account identified in Attachment A, of the existence of the warrant.

# Exhibit

# 1

<u>A F F I D A V I T</u>

I, Christopher Kajfosz, being duly sworn, hereby state as follows:

I.

<u>INTRODUCTION</u>

1.    I am a Special Agent ("SA") with the Federal Bureau of Investigation ("FBI"), and have been so employed for approximately two years.  I am currently assigned to the FBI's Cybercrimes squad, where I specialize in the investigation of computer and high-technology crimes, including computer intrusions, denial of service attacks, and other types of malicious computer activity.  During my career as an FBI Special Agent, I have participated in numerous computer crime investigations.  In addition, I have received both formal and informal training from the FBI and other institutions regarding computer-related investigations and computer technology.

2.    I make this affidavit in support of an application for a search warrant for information associated with the accounts identified as <u>sellcc_hotandnew_no1@yahoo.com</u> ("SUBJECT ACCOUNT #1") and <u>moneypak82@yahoo.com</u> ("SUBJECT ACCOUNT #2") (the "SUBJECT ACCOUNTS") that are stored at premises controlled by Yahoo! Inc. ("PROVIDER"), a provider of electronic communication and remote computing services, headquartered at 701 First

1

Avenue, Sunnyvale, California, 94089.[1]  The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), (b)(1)(A), and (c)(1)(A) to require the PROVIDER to disclose to the government copies of the information (including the content of communications) described in Section II. of Attachment B. Upon receipt of the information described in Section II. of Attachment B, law enforcement agents and/or individuals assisting law enforcement and acting at their direction will review that information to locate the items described in Section III. of Attachment B.

3.   As described more fully below, I respectfully submit there is probable cause to believe that the information associated with the SUBJECT ACCOUNTS constitutes evidence,

---

[1] Because this Court has jurisdiction over the offense(s) being investigated, it may issue the warrant to compel the PROVIDER pursuant to 18 U.S.C. §§ 2703(a), (b)(1)(A), (c)(1)(A).  See 18 U.S.C. §§ 2703(a) ("A governmental entity may require the disclosure by a provider . . . . pursuant to a warrant issued using the procedures described in the Federal Rules of Criminal Procedure . . . by a court of competent jurisdiction") and 2711 ("the term 'court of competent jurisdiction' includes -- (A) any district court of the United States (including a magistrate judge of such a court) or any United States court of appeals that -- (i) has jurisdiction over the offense being investigated; (ii) is in or for a district in which the provider of a wire or electronic communication service is located or in which the wire or electronic communications, records, or other information are stored; or (iii) is acting on a request for foreign assistance pursuant to section 3512 of this title").

contraband, fruits, or instrumentalities of criminal violations

of 18 U.S.C. §§ 1029(a)(1)-(5) (access device fraud), 1028A

(aggravated identity theft), 1343 (wire fraud), 1030 (computer

intrusion), and 371 (conspiracy) (collectively, the "SUBJECT

OFFENSES").

4.    The facts set forth in this affidavit are based upon

my personal observations, my training and experience, and

information obtained from other FBI agents and witnesses.  This

affidavit is intended to show merely that there is sufficient

probable cause for the requested warrant and does not purport to

set forth all of my knowledge of or investigation into this

matter.  Unless specifically indicated otherwise, all

conversations and statements described in this affidavit are

related in substance and in part only.

II.

SUMMARY OF INVESTIGATION

5.    After ISP records showed that theme park tickets

purchased with a stolen credit card number were bought from a

computer located at 4554 N. Banner Drive, Apartment 2, Long

Beach, California, 90807, the FBI executed a federal search

warrant at that location on October 2, 2012.  During the search

the FBI seized computers, cellular telephones, and theme park

tickets.  Among the items found on an iPhone seized at the

3

search location were e-mails from the SUBJECT ACCOUNTS which contained stolen credit card numbers.

III.

## PROBABLE CAUSE

6.   Based on my training and experience, I have learned the following:

a.   Carding:   "Carding" refers to various criminal activities associated with stealing personal identification information and financial information belonging to other individuals -- including the account numbers on their credit cards, bank cards, debit cards, or other access devices -- and using that information to obtain money, goods, or services without the victims' authorization or consent.  For example, a criminal might gain unauthorized access to (or "hack") a database maintained on a computer server and steal credit card numbers and other personal information.  The criminal can then use the stolen information to, among other things: (1) buy goods or services online; (2) manufacture counterfeit credit cards by encoding them with the stolen account information; (3) manufacture false identification documents (which can be used in turn to facilitate fraudulent purchases with the information); and (4) sell the information to others who intend to use the information for such purposes.  "Carding" refers to the foregoing criminal activity generally and encompasses a variety

4

of federal offenses, including, but not limited to,

identification document fraud, aggravated identity theft, access

device fraud, computer hacking, wire fraud, and bank fraud.

       b.   Card verification value codes:  Card verification

value code ("CVVC" or "CVV") is a security feature for credit or

debit card transactions, providing increased protections for the

merchants against credit card fraud.

      7.   On October 2, 2012, the FBI executed a federal search

warrant issued by United States Magistrate Judge Jean P.

Rosenbluth at 4554 N. Banner Drive, Apartment #2, Long Beach, CA

90807.  A copy of the affidavit sworn by Special Agent Mark

Burnett in support of that search warrant is attached hereto as

Exhibit A.

      8.   During the execution of the search warrant, FBI agents

interviewed the occupants of 4554 N. Banner Drive, Apartment #2.

I have reviewed the FBI 302s of those interviews as well as the

FBI 302s relating to the execution of the search warrant.  From

my review of those FBI 302s, I learned the following:

       a.   Lamarr Ramsey was one of the residents of 4554 N.

Banner Drive, Apartment #2.

       b.   Ramsey identified a photograph of the person who

sold Knott's Berry Farm tickets to an undercover FBI agent as

"Gotti."

5

c.   Ramsey admitted that "Gotti" comes over to his apartment to work on music and hang out.  Ramsey indicated that "Gotti" has used the computer at Ramsey's apartment.

d.   An iPhone 5 belonging to Ramsey was one of the items seized during execution of the search warrant.

9.   On November 2, 2012, I reviewed Ramsey's iPhone.  From my review of the iPhone I learned the following:

a.   The iPhone contained e-mails received from the e-mail account sellcc hotandnew no1@yahoo.com (SUBJECT ACCOUNT #1).

b.   On August 16, 2012, an e-mail containing 18 credit card numbers was received from SUBJECT ACOUNT #1, which included addresses, credit card expiration dates, and card verification value codes.  None of the addresses appeared to be related to the user of the iPhone, such as 4554 N. Banner Drive, Apartment 2, Long Beach, CA, 90807.

c.   On August 17, 2012, an e-mail containing nine credit card numbers was received from SUBJECT ACCOUNT #1 with addresses, credit card expiration dates, and card verification value codes.  None of the addresses appeared to be related to the user of the iPhone, such as 4554 N. Banner Drive, Apartment 2, Long Beach, CA, 90807.

d.   On August 25, 2012, an e-mail containing 17 credit card numbers was received from SUBJECT ACCOUNT #1 with

6

addresses, credit card expiration dates, and card verification value codes.  None of the addresses appeared to be related to the user of the iPhone, such as 4554 N. Banner Drive, Apartment 2, Long Beach, CA, 90807.

　　　e.　A Discover credit card number belonging to Krista Hardin was one of the credit card numbers located in an e-mail from SUBJECT ACCOUNT #1 on Ramsey's iPhone.

　　　10.　On November 5, 2012, I reviewed the tickets purchased by the undercover FBI special agent on August 24, 2012.  From those tickets I learned the following:

　　　a.　A Discover credit card number belonging to Hardin was used to purchase the six Knott's Berry Farm tickets re-sold to the undercover FBI Agent.

　　　b.　Each of the six tickets was registered to a different name, respectively; karen, john, tina, robert, sam and, megan.

　　　c.　The purchaser for all six tickets was Krista Hardin.

　　　d.　The method of payment for all six tickets was Discover Card.

　　　e.　The confirmation number for all six tickets was 52263748.

　　　f.　All six tickets were purchased on August 23, 2012.

11.   On September 11, 2012, Krista Hardin was interviewed via telephone.  During that interview Hardin said she did not purchase any Knott's Berry Farm tickets with her Discover Card, she did not authorize anyone to purchase tickets with her Discover Card, and she did not provide her Discover Card account information to anyone for purchasing tickets.

12.   On November 2, 2012, I reviewed the same iPhone taken from the address above.  From the review of the iPhone I learned the following:

a.   The iPhone also contained e-mails received from the e-mail account moneypak82@yahoo.com (SUBJECT ACCOUNT #2).

b.   On September 27, 2012, 13 credit card numbers were received from SUBJECT ACCOUNT #2 with addresses, credit card expiration dates, and card verification value codes.  None of the addresses appeared to be associated with the user of the iPhone, such as 4554 N. Banner Drive, Apartment 2, Long Beach, CA, 90807.

c.   A Discover credit card number belonging to victim Steven Petifurd was one of the credit card numbers sent via SUBJECT ACCOUNT #2.  According to information obtained from Knott's Berry Farm, Petifurd's Discover credit card was used to purchase e-tickets.

13.   On November 1, 2012, Steven Petifurd was interviewed via telephone.  During that interview Petifurd said he did not

8

purchase any Knott's Berry Farm tickets with his Discover credit card, he did not authorize anyone to purchase tickets with his Discover credit card, and he did not provide his Discover credit card account information to anyone for purchasing tickets.

IV.

BACKGROUND REGARDING E-MAIL AND THE PROVIDER

14. In my training and experience, I have learned that the PROVIDER provides a variety of online services, including e-mail, to the public. The PROVIDER allows subscribers to obtain e-mail accounts at the domain name yahoo.com, like the SUBJECT ACCOUNTS. Subscribers obtain an account by registering with the PROVIDER. During the registration process, the PROVIDER asks subscribers to provide basic personal information. Therefore, the computers of the PROVIDER are likely to contain stored electronic communications and information concerning subscribers and their use of the PROVIDER's services, such as account access information, e-mail transaction information, and account application information. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the user(s) of the SUBJECT ACCOUNTS.

15. A subscriber of the PROVIDER can also store with the PROVIDER files in addition to e-mails, such as Flickr contents, Yahoo! Group activity logs, Yahoo! Group content, Yahoo!

9

Chat/Instant Messenger logs, pictures, and other files, on servers maintained and/or owned by the PROVIDER. In my training and experience, evidence of who was using an e-mail account may be found in such information.

16. In my training and experience, e-mail providers generally ask their subscribers to provide certain personal identifying information when registering for an e-mail account. Such information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative e-mail addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number). In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the user(s) of the SUBJECT ACCOUNTS.

17. In my training and experience, e-mail providers typically retain certain transactional information about the creation and use of each account on their systems. This information can include the date on which the account was created, the length of service, records of login (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other

log files that reflect usage of the account.  In addition, e-
mail providers often have records of the Internet Protocol
("IP") address used to register the account and the IP addresses
associated with particular logins to the account.  Because every
device that connects to the Internet must use an IP address, IP
address information can help to identify which computers or
other devices were used to access the SUBJECT ACCOUNTS.

     18.  In my training and experience, e-mail account users
will sometimes communicate directly with an e-mail service
provider about issues relating to the account, such as technical
problems, billing inquiries, or complaints from other users.  E-
mail providers typically retain records about such
communications, including records of contacts between the user
and the provider's support services, as well records of any
actions taken by the provider or user as a result of the
communications.  In my training and experience, such information
may constitute evidence of the crimes under investigation
because the information can be used to identify the user(s) of
the SUBJECT ACCOUNTS.

     19.  I know from my training and experience that the
contents of an e-mail account may be important to establishing
the actual user who has dominion and control of that account at
a given time.  E-mail accounts may be registered in false names
or screen names from anywhere in the world with little to no

verification by the service provider.  They may also be used by multiple people.  Given the ease with which e-mail accounts may be created under aliases, and the rarity with which law enforcement has eyewitness testimony about a defendant's use of an e-mail account, investigators often have to rely on circumstantial evidence to show that an individual was the actual user of a particular account.  Only by piecing together information contained in the contents of an account may an investigator establish who the actual user of an account was. Often those pieces will come from a time period before the account was used in the criminal activity.  Limiting the scope of the search for information showing the actual user of the account would, in some instances, prevent the government from identifying the user of the account and, in other instances, prevent a defendant from suggesting that someone else was responsible.  Therefore, the complete contents of a given account, including the e-mail addresses and messages sent to that account, often provides important evidence regarding the actual user's dominion and control of that account.  For the purpose of searching for content demonstrating the actual user(s) of the SUBJECT ACCOUNTS, I am requesting a warrant requiring the PROVIDER to turn over information associated with the SUBJECT ACCOUNTS for a period beginning 90 days before the

earliest e-mail sent from the SUBJECT ACCOUNTS described above for review by the search team.

20. Relatedly, the government must be allowed to determine whether other individuals had access to the SUBJECT ACCOUNTS. If the government were constrained to review only a small subsection of an e-mail account, that small subsection might give the misleading impression that only a single user had access to the account.

21. I also know based on my training and experience that criminals discussing their criminal activity may use slang, short forms (abbreviated words or phrases such as lol to express "laugh out loud"), or codewords (which require entire strings or series of e-mail conversations to determine their true meaning) when discussing their crimes. They can also discuss aspects of the crime without specifically mentioning the crime involved. In the electronic world, it is even possible to use pictures, images and emoticons (images used to express a concept or idea such as a happy face inserted into the content of an e-mail or the manipulation and combination of keys on the computer keyboard to convey an idea, such as the use of a colon and paren :) to convey a smile or agreement) to discuss matters. "Keyword searches" would not account for any of these possibilities, so actual review of the contents of an e-mail account by law enforcement personnel with information regarding the identified

criminal activity, subject to the search procedures set forth in Attachment B, is necessary to find all relevant evidence within the account.

22. As set forth Attachment B, I am requesting a warrant that permits the search team to keep the original production from the PROVIDER under seal until the investigation is completed and, if a case is brought, that case is completed through disposition, trial, appeal, or collateral proceeding.

a. I make that request because I believe it might be impossible for the PROVIDER to authenticate information taken from the SUBJECT ACCOUNTS as its business record without the original production to examine. Even if the PROVIDER kept an original copy at the time of production (against which it could compare against the results of the search at the time of trial), the government cannot compel the PROVIDER to keep a copy for the entire pendency of the investigation and/or case. If the original production is destroyed, it may be impossible for the PROVIDER to examine a particular document found by the search team and confirm that it was a business record of the PROVIDER's taken from the SUBJECT ACCOUNTS.

b. I also know from my training and experience that many e-mail accounts are purged as part of the ordinary course of business by providers. For example, if an e-mail account is not accessed within a specified time period, it -- and its

14

contents -- may be deleted. As a consequence, there is a risk
that the only record of the contents of an e-mail account might
be the production that a provider makes to the government, for
example, if a defendant is incarcerated and does not (perhaps
cannot) access his or her e-mail account. Preserving evidence,
therefore, would ensure that the government can satisfy its
Brady obligations and give the defendant access to evidence that
might be used in his or her defense.

V.

REQUEST FOR NON-DISCLOSURE

23. Pursuant to 18 U.S.C. § 2705(b), I request that the
Court enter an order commanding the PROVIDER not to notify any
person, including the subscriber(s) of the SUBJECT ACCOUNTS, of
the existence of the warrant because there is reason to believe
that such notification will result in: (1) flight from
prosecution; (2) destruction of or tampering with evidence;
(3) intimidation of potential witnesses; or (4) otherwise
seriously jeopardizing the investigation. The full extent of the
current investigation described above is not public, and I know,
based on my training and experience, that credit card fraudsters
often will destroy digital evidence if the perpetrator learns of
an investigation. In addition, if the PROVIDER or other person
notifies the targets of the investigation that a warrant has been
issued for the SUBJECT ACCOUNTS, the unidentified perpetrators

will further mask their activity and seriously jeopardize the investigation.

VI.

CONCLUSION

24.  Based on the foregoing, I request that the Court issue the proposed search warrant.

/s/
_____
CHRISTOPHER KAJFOSZ
Special Agent, FBI

Subscribed and sworn to before
me on November 29, 2012

**JEAN P. ROSENBLUTH**
_____
HONORABLE JEAN P. ROSENBLUTH
UNITED STATES MAGISTRATE JUDGE